IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 3:16-CV-00694-C |
| | § | |
| UNITED OF OMAHA LIFE INSURANCE COMPANY, | § § | |
| | § | |
| Defendant. | § | |

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff makes the following motion for partial summary judgment against Defendant:

1.  Summary. On account of the loss of sight in his right eye, Plaintiff has asserted a claim in this action under Section 1132(a)(l)(B) of ERISA for $250,000, the amount of a benefit provided for by Defendant for loss of sight in one eye ("one-lost-eye benefit") under an accidental death and dismemberment policy in favor of Plaintiff's employer. As reflected in Plaintiff's Second Amended Complaint in this action, Plaintiff, prior to filing this action, made an administrative claim for the one-lost-eye benefit which Defendant denied, precipitating this action. By this motion, Plaintiff seeks summary judgment on his claim for the one-lost-eye benefit in the amount of $250,000, prejudgment interest, costs of court, and, subject to separate proof by affidavit, attorney's fees.

2. <u>Undisputed Facts Dictating Summary Judgment</u>. All undisputed facts on the basis of which summary judgment is appropriate are reflected in the administrative record maintained by Defendant with respect to Plaintiff's claim, a copy of pertinent portions of which is contained in the Appendix in support of this motion, filed concurrently herewith.[1] The facts in question are the following:

a. Plaintiff, as an employee of MS International, Inc., was, as of November 2013, covered by a group life and accidental death and dismemberment and life insurance policy (the "Policy") issued and administered by Defendant. App. 1-13, 22-48, 52-55.

b. The Policy provides for a benefit to Plaintiff of $250,000 for a "Loss of Sight" in one eye due to an "Accident." App. 14, 16, 23, 24, 38, 39, 58. Under the Policy, Loss of Sight is defined as the "total and permanent loss of the sight of the eye; the loss of sight must be irrecoverable by natural, surgical or artificial means." App. 38. Under the Policy, "Accident" is defined as a "sudden, unexpected, unforeseeable and unintended event, independent of Sickness and all other causes. App. 38. Accident does not include Sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, bacterial or viral

---

[1] The entire claim file is over 700 pages long, and large portions are completely irrelevant to the issues raised by this motion and there is substantial duplication within it. However, so that here is no possible claim of selective citation, Plaintiff has included in his Appendix the entire claim file, such that the pages from the claim file used within the Appendix correspond to the numbering of pages in the claim file. However, because of the <u>de novo</u> standard of review applicable to adjudication of the claim of Plaintiff for reasons stated in Plaintiff's concurrently filed brief, certain documents within the claim file, in particular the initial and final denials by Defendant of the one-lost-eye benefit to Plaintiff, are only relevant to establish the administrative history of Plaintiff's claim summarized in Paragraph 3 of this motion, and are not properly considered in the adjudication of the merits of the claim of Plaintiff in this action.

infection, regardless of how contracted. App. 38. Accident does include a bacterial infection that is in the nature of a foreseeable result of an accidental external bodily injury or accidental food poisoning." App. 38. Under the Policy, "Sickness" is defined as "a disease, disorder or condition, which requires treatment by a Physician." App. 52.

      c.    As reflected in travel documentation and medical records of multiple providers, including Dr. Robert Wang, Dr. Mirza Shahbaz-Hasan, Dr. James Merritt and Dr. Davinder Grover provided to Defendant, Plaintiff began to lose his sight in his right eye in 2014, a loss first determined in April 2014 to be the result of his contact with a fungus, Coccidioides,[2] native to West Texas, where he had last traveled in November 2013. App. 150-51, 291-294. In April 2014, Plaintiff underwent procedures which failed to stem the progress of the loss of sight in his right eye but confirmed that the ongoing loss of sight in his right eye was tied to contact with a fungus. App. 139-140, 151, 240-242. As of September 2014, it became obvious that the loss of sight was irreversible, leading to removal of his right eye in October 2014. App. 108-109, 117-119, 120-121, 122-123, 124, 145-146, 275-278, 341-342. Specifically, as reflected in subparagraphs (d) through €, it is indisputable that

---

[2] The scientific name is Coccidioides. It is an infectious agent and the infectious condition associated with contact with it is called "Valley fever," also called coccidioidomycosis, "The fungus is known to live in the soil in the southwestern United States and parts of Mexico and Central and South America. … People can get Valley fever by breathing in the microscopic fungal spores from the air, although most people who breathe in the spores don't get sick. Usually, people who get sick with Valley fever will get better on their own within weeks to months, but some people will need antifungal medication. Certain groups of people are at higher risk for becoming severely ill. It's difficult to prevent exposure to Coccidioides in areas where it's common in the environment, but people who are at higher risk for severe Valley fever should try to avoid breathing in large amounts of dust if they're in these areas." http://www.cdc.gov/fungal/coccidioidomycosis.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 3

Plaintiff's loss of sight in his right eye was the result of contact with a fungus and no other reason.

  d. On Hotels.com reports for Plaintiff reflected that he was traveling in West Texas on November 7, 2013 and November 8, 2013 and then again between November 19, 2013 and November 26, 2013. App. 291-294.

  e. In April 18, 2014, material was removed from Plaintiff's right eye by Dr. Wang in connection with a vtirectomy.[3] App. 139-140.  In a lab report dated April 18, 2014, relating to a positive fungus culture of material in Plaintiff's right eye, it was found to be positive for coccidioides. App. 151.

  f. On July 11, 2014, Dr. Wang confirmed in a progress note that, when he cleaned out Plaintiff's right eye in April 2014, the biopsy showed coccidio. App. 240-242.

  g. On July 23, 2014, Dr. Grover documented that Plaintiff was being treated for a fungal infection. App. 147-50.

  h. The operative report for a biopsy of Plaintiff's right eye on September 15, 2014 reflected a preoperative and postoperative diagnosis of fungal endopthalmitis secondary to coccidia. App. 145-146.[4] It also referred to the diagnosis as recalcitrant fungal endopthalmitis. App. 145-146.

---

  [3] Virectomy is a procedure to remove vitreous fluid from an eye. http://www.medilexicon.com/medicaldictionary.php?t=99283

  [4] Endophthalmitis is severe inflammation of the tissues inside the eye. http://www.kellogg.umich.edu/patientcare/conditions/endophthalmitis.html

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 4

   i. On September 30, 2014, a progress note by Dr. Shahbaz-Hasan stated that Plaintiff had a victrectomy on April 18, 2014 and "[a] week after discharge, micro lab called stating his vitriol fluid was showing 2 colonies of mold" . . . This [therapy] was continued through 5/9/2014 when the mold was identified as coccidiodes. His fungal serology for cocci also came back positive. He makes frequent trips to West Texas and has traveled in the Sonoran Desert zone." App. 275-78. Dr. Shahbaz also referred to Plaintiff's past medical history as involving Coccidiosis and to one of her impressions being progressing chronic right eye uveitis due to coccidiodea. App. 275-78.

   j. In a progress note dated October 1, 2014, Dr. Shahbaz-Hasan noted that labs for cultures and fungal serologies reflected Coccidiodes and that Plaintiff had suffered a progression due to coccidiodes infection. App. 113-115.

   k. On October 1, 2014, Defendant was notified by a short-term disability claim by Plaintiff that he would require an absence to deal with a fungus which contacted his right eye. App. 336-337.

   l. On October 8, 2014, Plaintiff made his claim for accidental eye loss benefit with Defendant, indicating that he was making a claim on account of a spore/fungus contacting his right eye, and that the loss of sight in Plaintiff's eye was determined to be irrevocable on September 26, 2014.  App.  106-7.

   m. On October 9, 2014, in a statement of attending physician supporting Plaintiff's application for short-term disability benefits, Dr. Shahbaz-Hasan referred to

Plaintiff suffering a progressive loss of sight due to coccidioides infection with a procedure to enucleate[5] the eye to proceed on October 13, 2014. App. 341-42.

   n. On October 13, 2014, Plaintiff's right eye was enucleated and in his operative note dated October 14, 2014, Dr. Merritt confirmed the loss of his right eye secondary to endogenous coccidial mycoses[6] infection which prior procedures had not been able to remove from his right eye. App. 120-121.

   o. A further surgical consultation report dated October 15, 2014, including a final pathologic diagnosis, reflected that the presence of Coccidiomycosis species was found in each of the elements of Plaintiff's right eye consistent with the presumed clinical diagnosis of fungal endopthalmitis and fungus in his right eye. App. 122-23.

   p. In progress notes dated October 16, 2014, Dr. Shahbaz-Hasan noted Plaintiff's chronic uveitis[7] of right eye due to coccidiodes in connection with the intervening removal of his right eyeball. App. 117-19.

   q. On November 18, 2014, Dr. Shahbaz-Hasan provided a statement of attending physician confirming that the loss of sight in Plaintiff's right eye was fungal, specifically, tied to Coccidiodes, and that the loss of sight was total and that his eye was removed on October 13, 2014. App. 108.

---

[5] Ennucleation of an eye means surgical removal of an eyeball that leaves the eye muscles and remaining orbital contents intact. http://www.surgeryencyclopedia.com/Ce-Fi/Enucleation-Eye.html

[6] Mycoses refers to a fungal infection. http://www.clevelandclinicmeded.com/medicalpubs/infectious/mycoses.

[7] Uveitis refers to inflammation of the uvea, or middle layer of tissue, within an eye. http://www.mayoclinic.org//uveitis/basics/definition/con-20026602.

    r.    On November 21, 2014, Dr. Merritt provided a statement of attending physician which confirmed that the loss of sight in Plaintiff's right eye was secondary to a coccidiosis of the eye and that there was no other previous injury or impairment contributing to the loss of sight. App. 109.

    s.    On December 7, 2014, Dr. Wang provided a statement of attending physician indicating that the cause of the loss of sight in Plaintiff's right eye was endogenous fungal endopthalmitis. App. 124.

    t.    In the course of addressing Plaintiff's claim, Defendant obtained a report from a physician reviewer of the medical records of Plaintiff, Martin Schapiro, which made certain findings as follows:

> To be perfectly clear, Mr. Ramirez suffered a sickness called Coccidiomycosis or "Valley Fever" that he acquired through fungal spore inhalation which eventually disseminated to his right eye. . . . The loss of his right eye . . . was the result of spore inhalation while visiting an endemic region for coccidiomycosis leading to sickness and intraocular infection. . . . The loss of his right eye . . . Was the direct result of an infection, acquired by inhalation that disseminated and secondarily caused inflammation (iritis) and IOP rise (glaucoma). . . . He suffered a devastating ocular infection acquired through the classic mechanism of spore inhalation resulting in primary infection in secondary dissemination while traveling in an endemic area for coccidiomycosis. The support for his diagnosis includes clinical course, serology, psychology, fungal culture and surgical pathologic findings are consistent with ocular coccidiomycosis.[8]

App. 71-81.

---

[8] While Dr. Shapiro purported to address whether Plaintiff's loss of vision in his right eye was attributable to an Accident or not within the meaning of the Policy, that aspect of his opinion may be disregarded, as his only claimed credential, that of a board-certified ophthalmologist, reflected in his review (App. 81), do not indicate any legal training or that he was purporting to give a legal opinion, and, any event, it is for this Court, applying a de novo standard of review, as explained in Plaintiff's concurrently filed brief, to address the issue whether Plaintiff's loss of sight in his right eye was based on an Accident as Plaintiff claims.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 7

u. A referral by Defendant of Plaintiff's claim for review identified the Physician Referral Category as Accident. App. 702.

v. Claim notes within Defendant's claim file at the outset of Defendant's claim acknowledged that the listed diagnosis based on medical records of Dr. Wang, Dr. Hasan and Dr. Merritt is "panuveitis secondary to Fungal endopthalmitis due to Coccidia" and recognized that "after failed local therapy he underwent enucleation (remove) (sic) of the Right Eye on 10/13/14" and that the medical records submitted as of that date also indicated "Chronic Uveitis secondary to Coccidiodes Infection." App. 701. Additional claim notes after an initial denial of Plaintiff's claim was appealed acknowledged that the diagnosis was "chronic right eye uveitis . . . which led to glaucoma, blindness and involution of the eyeball due to coccidiodes" resulting in "removal of the ion 10/13/14." App. 705.

3. <u>Administrative History</u>.

a. Plaintiff made a claim under the Policy for the one-lost-eye benefit, with supporting employer statement and attending physician statements and medical records, on October 8, 2014. App. 105-124, 676, 678, 680-683.

b. By letter dated February 4, 2015, Defendant denied the one-lost-eye-benefit under the Policy to Plaintiff on the ground that his loss of sight in one eye was not due to an Accident as defined by the Policy and did not occur within 60 days. App. 368-370.

c. By letter dated April 8, 2015, Plaintiff appealed Defendant's February 4, 2015 denial of the one-lost-eye benefit under the Policy, and provided supporting medical records

and other information, and by letter dated May 13, 2015, supplemented the appeal with additional medical records. App. 95-96, 98-342.

    d.    By letter dated June 18, 2015, Defendant reiterated its February 4, 2015 denial to Plaintiff of the one-lost-eye benefit under the Policy on the ground that his loss of sight in one eye was not the result of an Accident as defined by the Policy. App. 63-66.

    4.    <u>Legal Authority</u>. The legal authorities dictating the standard of review of Plaintiff's claim and summary judgment in Plaintiff's favor on the merits of his claim are stated in Plaintiff's brief in support of his motion for summary judgment, filed concurrently herewith.

    WHEREFORE, Plaintiff prays that this Court grant summary judgment on Plaintiff's claim.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 379-0823
(214) 379-0840 (telecopy)

COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure on June 14, 2016 to the following:

Linda.wills@wilsonelser.com
Marjorie.Cohen@wilsonelser.com
Linda P. Wills
Marjorie Cohen
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fanin, Suite 3300
Houston, Texas 77010

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 10